**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE HOTEL TVPRA LITIGATION** | : | **Case Nos. 2:25-cv-00461; 2:25-cv-00690; 2:25-cv-00851; 2:25-cv-01087; 2:25-cv-01091; 2:25-cv-01096; 2:25-cv-01097; 2:25-cv-01099** |
| | : | **Judge Algenon L. Marbley** |
| | : | **Magistrate Judge Kimberly A. Jolson** |

**OPINION & ORDER**

These matters come before this Court on motions to dismiss or transfer venue in several related cases. As set forth in this Court's rationale below, these motions are **DENIED** in large part, but are **GRANTED** with respect to certain defendants in one case for lack of personal jurisdiction. One defendant that failed to plead or defend is *sua sponte* dismissed for lack of personal jurisdiction, and the pending motion for default judgment against that defendant is **MOOT**.

Two cases brought by the same plaintiff are **TRANSFERRED** to the United States District Court for the Eastern District of New York, where this Court transferred her prior action in 2023.

Additionally, the motions to intervene submitted by a commercial insurer in five cases are **DENIED**.

## I. INTRODUCTION

Drive down any highway, visit any state, or stop in any town in America, and you will find hotels and motels ready to accommodate the traveler. The soft glow of hotel lights and signs at night beckons the weary, promising respite. To most, the promise of lodging and rest under such circumstances would be a welcome relief. We expect to be safe and secure when staying at a hotel.

Under our historic Anglo-American legal traditions and at common law, "[t]he occupation of an innkeeper [was] in the nature of a public employment. Inns [were] necessary for the accommodation of the public. The innkeeper [was] bound to receive all travellers who apply peaceably to be received as guests, so long as he [had] room; and he [was] an insurer of the property of the guest." *Town of Queensbury v. Culver*, 86 U.S. 83, 89 (1873); *see Lombard v. Louisiana*, 373 U.S. 267, 277 (1963) (Douglas, J., concurring) ("Wherever any subject takes upon himself a public trust for the benefit of the rest of his fellow subjects, he is eo ipso bound to serve the subject in all the things that are within the reach and comprehension of such an office, under pain of an action against him.") (citation omitted).

Plaintiffs allege that they suffered from a horrifying inversion of the respite expected by those who stay at hotels. They claim that they were held hostage at various hotels owned, operated, or franchised by the Defendants, where they were the victims of commercial sex trafficking.

Proceeding anonymously, Plaintiffs sue under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, and the Child Abuse Victim's Rights Act ("CAVRA"), 18 U.S.C. § 2255. Through these laws, Congress addressed the scourge of human trafficking. The national legislature has repeatedly and deliberately chose to expand the scope of liability for sex trafficking conduct through a civil remedy that supports the government's antitrafficking efforts—by empowering and incentivizing victims to sue for trafficking violations irrespective of criminal prosecution for those violations—and that targets the financial motivations and the infrastructure that allows trafficking organizations to thrive. Many otherwise-unassuming hotels and motels are a central place of the human trafficking scourge. The sex trafficking industry's infrastructure "begins and ends with physical spaces," and "providing traffickers with a

room is providing them with an essential place of business." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 2025 WL 2696500, at *2–3 (S.D. Ohio Sept. 22, 2025) (Marbley, J.).

Plaintiffs seek to avail themselves of the civil remedy Congress provided for in enacting each statute and hold Defendants liable for benefitting financially from their trafficking.

**A. Trafficking Victims Protection Reauthorization Act**

The TVPRA establishes criminal liability for sex trafficking:

> Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

The TVPRA also creates a civil cause of action:

> An individual who is a victim of a violation of [§ 1591] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person know or should have known has engaged in an act in violation of [§ 1591]) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

### B. Child Abuse Victim's Rights Act

Meanwhile, under CAVRA:

> Any person who, while a minor, was a victim of a violation of section . . . 1591 [among others] . . . of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

18 U.S.C. § 2255(a). CAVRA also provides that "process may be served in any district in which the defendant . . . is an inhabitant; or may be found." 18 U.S.C. § 2255(c)(2).

## II. BACKGROUND

Plaintiffs A.U.W., A.C., D.R.T., T.S., Y.J., and A.M.C. initiated TVPRA and CAVRA lawsuits in this district court against hotel defendants.[1] They sue both local franchised hotels as well as several national corporate hotel chains.

### A. National Defendants

Red Roof Inns is a global hotel chain with approximately 650 branded properties worldwide. Red Roof's corporate entities, such as Red Roof Inns, Inc., Red Roof Franchising, LLC, FMW RRI I LLC, BW RRI III LLC, RRF Holding Company, LLC, and RRI West Management, LLC are formed in Delaware and based in New Albany, Ohio.[2]

Wyndham is another global hotel chain, with approximately 9,000 branded properties worldwide. Wyndham's corporate entities, such as Wyndham Hotels & Resorts, Inc. and Wyndham Hotel Group, LLC, are formed in Delaware and based in Parsippany, New Jersey.[3] Two

---

[1] A.U.W. Compl., ECF No. 1; A.C. Am. Compl., ECF No. 16; D.R.T. Compl., ECF No. 1; T.S. Compl., ECF No. 1; Y.J. Compl., ECF No. 1; A.M.C. Compl., ECF No. 1. Paragraphs of each Plaintiff's operative pleading are cited to provide examples of allegations (*e.g.*, "A.U.W. ¶ 1" refers to the first paragraph of A.U.W.'s complaint, which is ECF No. 1 in A.U.W.'s case). D.R.T.'s and Y.J.'s pleadings duplicate paragraph numbering in certain sections, so this Court refers to their allegations by page number.

[2] A.C. ¶¶ 13–14, 18–19; T.S. ¶¶ 31, 34; AM.C. ¶¶ 13, 15.

[3] D.R.T. ¶¶ 12, 17.

Wyndham entities are now defunct: Travel + Leisure Co.[4] and Wyndham Worldwide Corporation.[5]

G6 is yet another large hotel chain with approximately 1,400 branded properties worldwide. G6's business entities, including G6 Hospitality, LLC, G6 Hospitality Franchising, LLC, and G6 Hospitality Property, LLC, are Delaware companies operating out of Carrollton, Texas.[6]

Finally, Choice Hotels International, Inc. is one of the largest hotel franchisors, with many branded properties worldwide. It is a Delaware corporation headquartered in Rockville, New York.[7]

### B. Plaintiff A.U.W. (Case No. 2:25-cv-01087)

Plaintiff A.U.W. is a resident of Fort Worth, Texas who brought her suit on September 23, 2025. Among other hotel defendants, she sued Red Roof Inns, Inc. and Red Roof Franchising, LLC.

A.U.W. alleges that she was held hostage and sold for sex at a Red Roof Inn-branded hotel in Houston, Texas in 2019, when she was 14 years old.[8] She brings two counts for violations of the TVPRA and CAVRA.[9]

The Red Roof defendants moved to dismiss or transfer venue.[10] A.U.W. opposed,[11] and the defendants replied.[12] Additionally, Liberty Mutual Fire Insurance Company, which provided

---

[4] D.R.T. ¶¶ 14–16. Travel + Leisure Co. was formerly known as "Wyndham Worldwide."
[5] J.T. II, Case No. 2:25-cv-00461, ¶ 27.
[6] T.S. ¶¶ 24–26.
[7] J.T. II, Case No. 2:25-cv-00461, ¶ 24.
[8] A.U.W. ¶¶ 1–8, 92–93.
[9] A.U.W. ¶¶ 145–63.
[10] A.U.W., ECF No. 39.
[11] A.U.W. ECF No. 43.
[12] A.U.W. ECF No. 46.

commercial insurance coverage to the Red Roof defendants, moved to intervene.[13] A.U.W. and the Red Roof defendants oppose intervention.[14]

**C. Plaintiff A.C. (Case No. 2:25-cv-01097)**

Plaintiff A.C. is a resident of Saint Charles, Maryland who also brought her suit on September 23, 2025. Among other hotel defendants, she sued three Red Roof Inns-brand hotel entities: Red Roof Inns, Inc., FMW RRI I LLC, and BW RRI III LLC.

A.C. alleges that she was held hostage and sold for sex at a Red Roof Inn-branded hotel at Oxon Hill, Maryland from approximately 2014 through 2016, from the time she was 17 years old until she was 19.[15] She brings two counts for violations of the TVPRA and CAVRA.[16]

The Red Roof defendants moved to dismiss or transfer venue.[17] A.C. opposed,[18] and the defendants replied.[19] Liberty Mutual Fire Insurance Company moved to intervene.[20] Both A.C. and the Red Roof defendants opposed intervention.[21]

**D. Plaintiff D.R.T. (Case No. 2:25-cv-01096)**

Plaintiff D.R.T. is a resident of Los Angeles, California who brought her suit on September 23, 2025 as well. She sued a variety of defendants, including Wyndham Hotels & Resorts, Inc., Travel + Leisure Co., Wyndham Hotel Group, LLC, Red Roof Inns, Inc., Red Roof Franchising, LLC, and Sleepland Inc. Sleepland Inc. is a California corporation that operates as a Wyndham franchisee in California.[22]

---

[13] A.U.W. ECF No. 50.
[14] A.U.W. ECF Nos. 52; 54.
[15] A.C. ¶¶ 1–8, 86–87.
[16] A.C. ¶¶ 139–57.
[17] A.C., ECF No. 26.
[18] A.C., ECF No. 32.
[19] A.C., ECF No. 39.
[20] A.C., ECF No. 50.
[21] A.C., ECF Nos. 61; 60.
[22] D.R.T. ¶ 21.

D.R.T. alleges that she was held hostage and sold for sex at a Wyndham Days Inn-branded hotel in Buena Park, California between 2015 and June 2016 operated by Sleepland Inc.; a Motel 6 in San Bernardino, California during 2015 and 2016; a Motel 6 in Buena Park, California between 2015 and approximately June 2016; and a Red Roof Plus-branded hotel in Chula Vista, California throughout 2020.[23] She alleges that she was 12 years old when her trafficking began in 2015, and 17 years old for her most recent trafficking claims in 2020.[24] She brings two counts for violations of the TVPRA and CAVRA.[25]

The Wyndham Defendants, Red Roof Defendants, and Sleepland, Inc. moved to dismiss or transfer venue.[26] D.R.T. opposed,[27] and the defendants have replied.[28] Liberty Mutual Fire Insurance Company moved to intervene in this case, too.[29] Both D.R.T. and the Red Roof defendants opposed intervention.[30]

**E. Plaintiff T.S. (Case No. 2:25-cv-1099)**

Plaintiff T.S. is a resident of San Angelo, Texas who brought her suit on September 23, 2025. She sued Wyndham Hotels & Resorts, Inc., Travel + Leisure Co., Wyndham Hotel Group, LLC, Asim Enterprises LP, G6 Hospitality, LLC, G6 Hospitality Franchising, LLC, G6 Hospitality Property, LLC, HP Lodging, LLC, MGA Hospitality Group, Inc., Red Roof Inns, Inc., Red Roof Franchising, LLC, and Westchase Interests LLC. Asim Enterprises LP is a Texas partnership operating as a Wyndham franchisee in Texas; HP Lodging, LLC and MGA Hospitality Group,

---

23 D.R.T. 27, 30, 33, 35.
24 D.R.T. 2.
25 D.R.T. 56–59.
26 D.R.T. ECF Nos. 18; 53; 58.
27 D.R.T. ECF Nos. 36; 64; 69.
28 D.R.T. ECF Nos. 47; 76; 75.
29 D.R.T. ECF No. 91.
30 D.R.T. ECF Nos. 102; 101.

Inc. are California entities operating as G6 franchisees in California; and Westchase Interests LLC is a Texas company operating as a Red Roof franchisee in Texas.[31]

T.S. alleges that she was held hostage and sold for sex at a Wyndham-branded La Quinta in Houston, Texas between 2014 and 2019; at a G6-branded Motel 6 in San Bernardino, California from 2018 until 2019; at a G6-branded Motel 6 in Ontario, California operated by HP Lodging, LLC from 2018 until 2019; at a G6-branded Motel 6 in Anaheim, California from 2018 until 2019; at a G6-branded Motel 6 operated by MGA Hospitality Group, Inc. in Van Nuys, California from 2018 until 2019; at a G6-branded Motel 6 in Pomona, California from 2018 until 2019; and at a Red Roof Inn-branded hotel in Houston, Texas from 2014 until 2019.[32] She alleges that she was 17 years old when her trafficking began in 2013, and 23 years old for her most recent trafficking claims in 2019.[33] She brings two counts for violations of the TVPRA and CAVRA.[34]

The Wyndham Defendants, Asim Enterprises LP, G6 Defendants, HP Lodging, LLC, Red Roof defendants, and Westchase Interests LLC moved to dismiss or transfer venue.[35] T.S. opposed all motions except for Westchase Interests LLC's,[36] and the defendants have replied where T.S. opposed.[37] Because Defendant MGA Hospitality Group, Inc. failed to plead or otherwise defend, the clerk entered default, and T.S. moved for default judgment but requests this Court hold the motion in abeyance until a trial on the merits.[38] Again, Liberty Mutual Fire Insurance Company moved to intervene.[39] Both T.S. and the Red Roof defendants opposed intervention.[40]

---

[31] T.S. ¶¶ 20, 27, 29, 38.
[32] T.S. ¶¶ 18–19, 92–93, 107–08, 123–24, 151–52, 166–67, 180–81.
[33] T.S. ¶ 3.
[34] T.S. ¶¶ 263–81.
[35] T.S. ECF Nos. 18; 26; 33; 46; 57; 71.
[36] T.S. ECF Nos. 32; 47; 66; 67; 75.
[37] T.S. ECF Nos. 41; 54; 73; 76; 83.
[38] T.S. ECF No. 108.
[39] T.S. ECF No. 94.
[40] T.S. ECF Nos. 112; 111.

### F. Plaintiff Y.J. (Case No. 2:25-cv-1091)

Plaintiff Y.J. is a resident of Dallas, Texas who brought her suit on September 23, 2025. She sued Defendants Wyndham Hotels & Resorts, Inc., Travel + Leisure Co., and Wyndham Hotel Group, LLC, G6 Hospitality, LLC, G6 Hospitality Franchising, LLC, Couture Hotel Group, and Bajrangi Hotels LLC. Couture Hotel Group is a Texas corporation operating as a Wyndham franchisee in Texas; Bajrangi Hotels LLC is a Texas limited liability company operating as a G6 franchisee in Dallas, Texas.[41]

Y.J. alleges that she was held hostage and sold for sex at a Wyndham-branded Garden Hotel in Dallas, Texas in the summer of 2019 and at a G 6-branded Motel 6 in Dallas, Texas during the fall of 2019.[42] She alleges that she was 17 years old when she was trafficked.[43] She brings two counts for violations of the TVPRA and CAVRA.[44]

The Wyndham Defendants, G6 Defendants, and Couture Hotel Group moved to dismiss or transfer venue.[45] Y.J. opposed,[46] and the Wyndham Defendants and Couture Hotel Group have replied.[47] Although the G6 Defendants requested and obtained additional time to file a reply brief, they ultimately did not do so.[48]

### G. Plaintiff A.M.C. (Case No. 2:25-cv-00851)

Plaintiff A.M.C. is a resident of Florida who brought her suit on August 1, 2025. She sued Red Roof Inns, Inc., RRF Holding Company, LLC, Red Roof Franchising, LLC, RRI West

[41] Y.J. 3–10.
[42] Y.J. 19–20, 23.
[43] Y.J. 1, 15, 17.
[44] Y.J. 36–39.
[45] Y.J. ECF Nos. 15; 38; 39.
[46] Y.J. ECF Nos. 27; 41; 42.
[47] Y.J. ECF Nos. 30; 47
[48] Y.J. ECF Nos. 43; 44.

Management, LLC and Rashi LLC. Rashi LLC is a Florida limited liability company operating as a Red Roof franchisee in Tallahassee, Florida.[49]

A.M.C. alleges that she was held hostage and sold for sex at a Red Roof Inn-branded hotel in Tallahassee, Florida from January 1, 2015 until March 27, 2015.[50] She brings her cause of action under the TVPRA.[51]

The Red Roof Defendants and Rashi LLC moved to dismiss or transfer venue.[52] A.M.C. opposed,[53] and the defendants have replied.[54]

Once more, Liberty Mutual Fire Insurance Company moved to intervene.[55] Both A.M.C. and Defendants Red Roof Inns, Inc., RRF Holding Company, LLC, Red Roof Franchising, LLC, and RRI West Management, LLC opposed intervention.[56]

**H. Plaintiff J.T. (Case Nos. 2:25-cv-00461; 2:25-cv-00690)**

Finally, Plaintiff J.T. presents a unique set of circumstances, as she has brought three actions in this district court, one of which this Court transferred to the U.S. District Court for the Eastern District of New York in 2023, and two of which are live.[57] For reasons set forth in detail below, *see* Section IV(D)(3), this Court will not review the merits of J.T.'s allegations, but instead will transfer her live cases to the Eastern District of New York.

J.T. first initiated suit in 2022, naming Choice Hotels International, Inc., Wyndham Hotels & Resorts, Inc., Red Roof Inns, Inc., and Red Roof Franchising, LLC as defendants. *See J.T. v.*

---

[49] A.M.C. ¶ 17.
[50] A.M.C. ¶¶ 1–8, 24–25.
[51] A.M.C. ¶¶ 109–19.
[52] A.M.C. ECF Nos. 27; 44.
[53] A.M.C. ECF Nos. 35; 45.
[54] A.M.C. ECF Nos. 38; 48.
[55] A.M.C. ECF No. 50.
[56] A.M.C. ECF Nos. 51; 53.
[57] This Court refers to J.T.'s operative complaint in Case No. 2:22-cv-03842 as "J.T. I"; in Case No. 2:25-cv-00461 as "J.T. II"; and in Case No. 2:25-cv-00690 as "J.T. III."

*Choice Hotels Int'l, Inc.*, Case No. 2:22-cv-03842. In that action, she alleged she was a resident of New Jersey trafficked at hotels in Queens, Rockville Centre, and Westbury, New York.[58] She alleged that she was 16 years old when she was kidnapped by her trafficker, and sought relief under CAVRA.[59] This Court transferred J.T.'s case to the Eastern District of New York in 2023, reasoning that it lacked both general and specific personal jurisdiction over the non-Red Roof defendants she had named and determining that venue would be proper and personal jurisdiction would exist there. *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *13–14 & 13 n.15 (S.D. Ohio Apr. 25, 2023) (Marbley, J.). That decision misunderstood J.T.'s allegations, and overlooked that she alleged she was trafficked as a minor. *Id.* at 21 n.23. Regardless, once her action was transferred to the Eastern District of New York, J.T. voluntarily dismissed her claims without prejudice. *J.T. v. Choice Hotels Int'l, Inc.*, Case No. 2:23-cv-03209 (E.D.N.Y. Aug. 28, 2023) (ECF No. 16).

Nearly two years later, J.T. brought two new actions in this district court. In her first action, she sues more corporate hotel defendants, including Choice Hotels International, Inc. Wyndham Hotels & Resorts, Inc., Wyndham Worldwide Corporation, Wyndham Hotel Group, LLC, Red Roof Inns, Inc., Red Roof Franchising, LLC, G6 Hospitality, LLC, and G6 Hospitality Franchising, LLC.[60] In her second action, she sues Capri Motor Inn and Coliseum Motor Inn Corporation, NCDI Realty Corporation, and Bay Shore Motel LLC, all of which are alleged to be organized under the laws of and operating within the State of New York.[61]

---

[58] J.T. I ¶¶ 22, 26, 32, 51.
[59] J.T. I ¶¶ 46, 145.
[60] J.T. II ¶¶ 24–45.
[61] J.T. III ¶¶ 8, 16–31.

In both cases, the Defendants have moved to dismiss or transfer to the Eastern District of New York.[62] J.T. opposed.[63]

## I. Allegations

This Court summarizes the significant allegations made by Plaintiffs A.U.W., A.C., D.R.T., T.S., Y.J., and A.M.C.

Plaintiffs claim that they were held hostage by traffickers at the defendants' hotels and sold there for commercial sex. Broadly, they assert similar allegations against the defendants, accusing them of ignoring consistent red flags, including that: their rooms were paid for in cash; their hotel stays were marked by obvious signs of illegal drug use, frequent requests for linen changes, large numbers of condoms in the trash, loud noises of abuse audible to staff or other guests; and an unusually large numbers of male visitors coming and going to and from their hotel rooms; their appearances raised concerns, as they were subjected to physical abuse in public spaces, displayed visible signs of prior private physical abuse, and wore clothing inappropriate for the weather; and they lived out of their hotel rooms while loitering or soliciting on hotel property.[64] Hotel staff would place them in rooms away from other guests and saw them "being held captive, controlled, drugged, abused, hit, and trafficked," or otherwise elected to avoid—or were paid to refrain from—investigating suspicious activity.[65]

Plaintiffs generally allege that the Defendants knew or should have known that they were generating revenue through policies that encouraged sex traffickers to operate at their properties, including by failing to implement policies and procedures that would stop known trafficking,

---

[62] J.T. II ECF Nos. 49; 50; 85; J.T. III ECF Nos. 32; 37; 58.
[63] J.T. II ECF Nos. 64; 86; J.T. III ECF Nos. 35; 39; 68.
[64] A.U.W. ¶ 97; A.C. ¶ 91; D.R.T. 28, 31, 33–34, 36; T.S. ¶¶ 98, 114, 128, 142, 157, 171, 185; Y.J. 21, 23; *accord* A.M.C. ¶¶ 31, 41, 72–73, 78, 85, 107.
[65] A.U.W. ¶¶ 94, 99; A.C. ¶¶ 88, 93; D.R.T. 27 –28, 30–31, 33–36; T.S. ¶¶ 95, 100, 109, 112, 116, 125, 130, 139, 144, 153, 159, 168, 173, 182, 187; Y.J. 20–21, 23–24; *see* A.M.C. ¶¶ 31, 72–73, 77–78.

failing to act on guest reviews complaining about "the prevalence of obvious trafficking, hearing physical violence by traffickers, and other signs."[66] They were aware of the problems of human trafficking and what was required to prevent it, yet did not create effective standards to identify and prevent trafficking across their hotels.[67] Instead, they benefitted from the "steady stream of income" that traffickers and johns brought to their hotel, profiting from room rentals, data collected from Wi-Fi usage whereby traffickers and customers "advertise[d] and solicit[ed] . . . for commercial sex."[68] Through the collection of this data, the corporate hotel defendants were able to witness the obvious signs of trafficking, just as hotel employees could observe many red flags of trafficking in person, yet all defendants failed to act due to a lack of proper measures in place.[69]

Often, online reviews discussing the prevalence of prostitution, pimps, drug dealing, a lack of security, and heavy police presence allegedly put Defendants on notice about illegal activity on their properties. In one case, hotel management allegedly responded to reviews, and thus had notice of "men 'pimping out prostitutes.'"[70] In another, numerous reviews mentioned the property to be "known by law enforcement for human trafficking," and one claimed that a man "receiv[ed] oral sex in the middle of the parking lot."[71]

Other times, it is alleged that hotel staff turned a blind eye, actively facilitated plaintiffs' trafficking, or even participated in sexual abuse of the plaintiffs. For example, in A.C.'s case, "[e]mployees at the [subject] Red Roof were very friendly with [her] trafficker," who would "show . . . staff his 'inventory,' meaning his girls. . . . [N]umerous employees . . . paid for sex with A.C.

[66] A.U.W. ¶¶ 100–01; A.C. ¶¶ 95–96; D.R.T. 29, 31–32, 34–37; T.S. ¶¶ 101–02, 117–18, 131–32, 145–46, 160–61, 174–75, 189–90; Y.J. 21–22, 24; A.M.C. ¶¶ 43, 47, 70–75, 87–108 .
[67] A.U.W. ¶¶ 112, 114; A.C. ¶¶ 106, 108; D.R.T. 40–41; T.S. ¶¶ 200–03; Y.J. 27–28; A.M.C. ¶¶ 40, 87–108.
[68] A.U.W. ¶¶ 115–16; A.C. ¶¶ 109–10; D.R.T. 41; T.S. ¶¶ 204–05; Y.J. 28; A.M.C. ¶¶ 67, 93, 96, 107.
[69] A.U.W. ¶ 118; A.C. ¶ 112; D.R.T. 41–42; T.S. ¶ 207; Y.J. 28–29; A.M.C. ¶ 107.
[70] A.U.W. ¶ 102.
[71] D.R.T. 29.

and other women being trafficked" there.[72] T.S.'s traffickers were "very friendly" with the hotel staff at the G6-branded Motel 6 in San Bernardino, paid an extra fee to run their business out of the building, and were told to confine their activities to hotel rooms.[73] Moreover, "[a] [night shift] manager at the Van Nuys Motel 6 would engage in sexual acts with T.S.[,] . . . would exchange free rooms for sex with T.S. or other trafficking victims[,] [and] would also have sex with one of T.S.' traffickers."[74] T.S. also alleges that when she got in a fight with one of her traffickers at the Wyndham-branded La Quinta in Houston, she was kicked in the nose, fled her room to the pool area, and was "pulled . . . through public areas by her hair"—apparently, without any response from hotel staff.[75] Meanwhile, Y.J. alleged that her traffickers "were related to one of the staff members at the Dallas Motel 6," who was an assistant manager and provided room discounts.[76] D.R.T. alleged that a manager of a Wyndham-branded Buena Park Days Inn attempted to kick her and her trafficker out for causing a scene after her trafficker caused a noise disturbance. But the manager then accepted $100 from her trafficker to not kick them out, and agreed that he would not call the police.[77] Similarly, A.M.C.'s trafficker is alleged to have chosen to traffic A.M.C. at the selected hotel because "it was known among the community of traffickers that staff . . . turned a blind eye to sex trafficking," and he paid hotel staff, including housekeeping personnel, to stay quiet and not report suspicious activity.[78]

The corporate hotel defendants are alleged to have accrued information about trafficking at their properties by maintaining centralized data systems with property management, booking, credit processing, and information technology and internet systems. Yet, it is alleged that they

---

[72] A.C. ¶ 94.
[73] T.S. ¶¶ 110, 112.
[74] T.S. ¶ 154.
[75] T.S. ¶ 97.
[76] Y.J. 23
[77] D.R.T. 28
[78] A.M.C. ¶¶ 77–78.

failed to take steps to intervene, alert authorities, or cease profiting from human trafficking. Instead, they maintained systems and procedural deficiencies to maximize profits.[79] They are alleged to have "exercise[ed] day-to-day control over" their hotel properties, including franchised properties, by setting standards, centralizing systems, maintaining applicable training and policies, and collecting data and information—including on guest Wi-Fi use.[80]

## III. STANDARD OF REVIEW

Collectively, Defendants seek dismissal of Plaintiffs' pleadings pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6). In the alternative, they also generally seek discretionary venue transfer pursuant to 28 U.S.C. § 1404(a).

### A. Personal Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) challenges the district court's personal jurisdiction over the case. To determine that personal jurisdiction exists over an out-of-state defendant, the court generally must find: (1) the forum state's long-arm statute authorizes jurisdiction; and (2) exercising that jurisdiction comports with constitutional due process. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). The plaintiff bears the burden of establishing that personal jurisdiction exists over a defendant. *Id.* at 549.

Where, as here, "the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal.'" *Id.*

---

[79] A.U.W. ¶¶ 121–22; A.C. ¶¶ 115–16; D.R.T. 42–43; T.S. ¶¶ 210–11; Y.J. 28–31; A.M.C. ¶¶ 43–44, 67, 75, 79, 84, 86.

[80] A.U.W. ¶¶ 133–42; A.C. ¶¶ 127–36; D.R.T. 47–55; T.S. ¶¶ 233–60; Y.J. 31–36; A.M.C. ¶ 107.

(citations omitted). The plaintiff can make this showing by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citation omitted). In deciding a Rule 12(b)(2) motion, a district court "must consider the pleadings and affidavits in a light most favorable to the non-moving party," and "does not weigh the controverting assertions of the party seeking dismissal." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). The district court may transfer a case to a proper venue to cure want of jurisdiction. *See* 28 U.S.C. § 1631.

**B. Improper Venue**

A motion to dismiss pursuant to Rule 12(b)(3) challenges the venue of the district court. Venue is proper in: (1) any district in which the defendant resides, if all defendants are residents of the state; (2) a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property is situated"; or (3) if there is no other district where the action may be brought so long as the court has personal jurisdiction over the defendant. 28 U.S.C. § 1391(b). Where venue is challenged, its proponent "bears the burden of proving venue by a preponderance of the evidence." *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 619 (6th Cir. 2025).

When venue is found to be improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

**C. Failure to State a Claim**

Separately, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss pursuant to Rule 12(b)(6) evaluates the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion tests the complaint's cause of action and is "not a challenge to [its] factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Thus, in evaluating a Rule 12(b)(6) motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accept [all] allegations as true, and draw all reasonable inferences in [plaintiff's] favor." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks and citation omitted). This favorable treatment of the complaint applies to well-pleaded factual allegations. Complaints cannot rest on legal conclusions, as "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient; similarly, factual assertions cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In sum, the facts alleged must be sufficient to "raise a right to relief above the speculative level," such that the complaint states a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 555, 570; *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

Beyond the complaint itself, courts may also consider exhibits attached to the complaint, "public records, items appearing in the record of the case and exhibits attached to the defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.

**D. Discretionary Venue Transfer**

Even when venue is proper, a court may exercise its discretion to grant a motion to transfer venue under 28 U.S.C. § 1404(a) if the transfer would further the convenience of the parties and

the witnesses and be in the interest of justice. *See A.C. v. Red Roof Inns, Inc.*, 2020 WL 3256261, at *1 (S.D. Ohio June 16, 2020) (Marbley, J.).

## IV. LAW & ANALYSIS

### A. Personal Jurisdiction

This Court begins with personal jurisdiction, since "personal jurisdiction is a threshold determination linked to any subsequent order issued by the court." *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006). Most of the Defendants challenge this Court's personal jurisdiction over them. All Plaintiffs except A.M.C. bring CAVRA claims. This Court will first determine whether personal jurisdiction exists over the Defendants in A.M.C.'s TVPRA lawsuit, before turning to personal jurisdiction under CAVRA.

#### *1. A.M.C.'s TVPRA Case*

As a threshold matter, the Red Roof Defendants do not challenge this Court's jurisdiction over them. Appropriately so. This Court does have personal jurisdiction over them. *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *10. Instead, they argue that this Court lacks personal jurisdiction over Defendant Rashi, LLC, necessitating a change in venue.[81] And although Rashi, LLC frames its challenge as being to venue, it also argues that this Court lacks personal jurisdiction over it.[82] While Rashi, LLC's personal jurisdiction arguments are perfunctory and underdeveloped, this Court must assure itself that it possesses personal jurisdiction.

Personal jurisdiction exists over a defendant if that defendant is "amenable to service of process" under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny it due process. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). There are two

[81] A.M.C. ECF No. 27 at 4–7.
[82] A.M.C. ECF No. 44 at 1, 5.

categories of personal jurisdiction: general and specific. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (Marbley, J., by designation).

General jurisdiction exists when the defendant's contacts or affiliations with the forum state are "so 'continuous and systematic' as to render" the defendant "essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). For a corporation, this all-purpose general jurisdiction exists where it is fairly regarded at home—paradigmatically, "where it is incorporated or has its principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For Rashi, LLC, this appears to be Florida. At any rate, there are no allegations to support it being subject to this Court's general jurisdiction in Ohio. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020).

Specific jurisdiction, on the other hand, exists over out-of-state defendants where they have "'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear*, 564 U.S. at 923 (quoting *Int'l Shoe*, 326 U.S. at 316). It "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation," and is "confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (citations omitted). The plaintiff must show that the out-of-state defendant "'purposefully directed' his activities at the residents of the forum," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)), "and the litigation results from alleged injuries that 'arise out of or relate to' those activities," *id.* at 472–73 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

This Court's subject matter jurisdiction arises under federal question jurisdiction, so specific personal jurisdiction "exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird*, 289 F.3d at 871 (cleaned up). Ohio's long-arm statute became "coextensive" with the limits of due process. *C.T. v. Red Roof Inns, Inc.*, 2021 WL 2942483, at *10 (S.D. Ohio July 1, 2021) (Marbley, J.). As of April 7, 2021, "a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(C). Therefore, the inquiry into Ohio's long-arm statute collapses into the analysis of Rashi, LLC's due process rights.

The Sixth Circuit has set forth three requirements to protect the due process rights of a defendant and determine whether specific personal jurisdiction exists: (1) the defendant "must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state"; (2) "the cause of action must arise from [or relate to] the defendant's activities there"; and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Intera Corp.*, 428 F.3d at 615 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Each element is met in this case. First, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). A.M.C. has made numerous allegations that connect Rashi, LLC to Ohio, including the "[d]ispositive" allegations that Rashi, LLC transmitted electronic information to the Red Roof Defendants in Ohio. *N.A.O.*

*v. Red Roof Inns, Inc.*, 2026 WL 2836383, at *6 (S.D. Ohio Sept. 22, 2026) (Marbley, J.). This transmission allegedly included guest internet data, which was collected when A.M.C.'s traffickers advertised and solicited her for commercial sex at the hotel on the hotel's free Wi-Fi, Wi-Fi required by the franchisor's policies.[83] In transmitting this data, Rashi, LLC "reached the state of Ohio through its computer wires." *H.M.L. v. Red Roof Inns, Inc.*, 2026 WL 872917, at *5 (S.D. Ohio Mar. 30, 2026) (Marbley, J.).

Second, the cause of action must arise from or relate to the defendant's activities in the forum state. This requirement is "subject to a lenient standard." *Carbone v. Kaal*, 140 F.4th 805, 813–14 (6th Cir. 2025) (citation and internal quotation marks omitted); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021). Again, *H.M.L.* and *N.A.O.* are instructive. In them, this Court determined that a franchisee "digitally reached out to Ohio" in a way that directly related to a plaintiff's TVPRA case when the franchisee allegedly transferred internet data, "including data that [the] trafficker used to advertise and solicit [the plaintiff's] sexual exploitation, from its hotel [out-of-state] to Red Roof headquarters in Ohio as a regular part of its business operations." *H.M.L.*, 2026 WL 872917, at *7. These alleged data transfers formed part of the plaintiff's TVPRA claim in *H.M.L.*, just as they do here, as they "implicate the elements of the beneficiary theory of liability." *Id.* at *8.; *N.A.O.*, 2026 WL 2836383, at *6.

Third, the exercise of personal jurisdiction over Rashi, LLC must be reasonable. To evaluate reasonableness, this Court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief in that particular forum. *Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014) (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)). Where the first two requirements

---

[83] A.M.C. ¶¶ 85, 96, 107.

of due process are met, "there is an inference that the reasonableness prong is satisfied as well." *Intera Corp.*, 428 F.3d at 618. Because Rashi, LLC has purposefully directed relevant activities to Ohio, it "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. It has failed to do so, and its rights would not be violated by the exercise of personal jurisdiction over it in this case.

***2. CAVRA Cases***

Congress can confer nationwide personal jurisdiction when it includes a nationwide service of process provision in a statute, "permitting claimants to sue a defendant in any of the federal district courts in the country." *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 438 (6th Cir. 2022); *see also Med. Mut. of Ohio v. DeSoto*, 245 F. 3d 561, 567 (6th Cir. 2001). That is precisely what Congress did when it enacted CAVRA. 18 U.S.C. § 2255(c)(2); *e.g.*, *Doe v. MG Freesites, LTD*, 676 F. Supp. 3d 1136, 1173 (N.D. Ala. 2022) ("It is well accepted that this type of statutory language authorizes nationwide service of process.") (collecting cases); *N.R. v. Southfield Hotel, LLC*, 2026 WL 2823327, at *4–5 (S.D. Ohio Sept. 21, 2026) (Marbley, J.). As this Court has explained, CAVRA's provision of nationwide service of process establishes personal jurisdiction. *See In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *9 (citing Fed. R. Civ. P. 4(k)(1)(C)). Thus, the inquiry into personal jurisdiction "no longer assesses whether the defendant has minimum contacts with the forum state but instead determines whether a defendant has minimum contacts to the United States." *Id.*

There is no dispute that all the Defendants have minimum contacts with the United States because they are all United States corporations or companies that are domestic citizens of various states within the United States (whether by virtue of their place of incorporation, principal place of business, headquarters, or citizenship as derived from members). *Id.* at *10. Accordingly, to

determine whether this Court possesses personal jurisdiction over the Defendants in CAVRA cases, this Court must first analyze whether those Plaintiffs have stated a CAVRA claim. *G.M. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 766, 771 (S.D. Ohio 2024) (Marbley, J.); *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 793 (S.D. Ohio 2024) (Marbley, J.). The analysis of personal jurisdiction flows into whether Plaintiffs have stated claims for relief under CAVRA.

**B. Sufficiency of Claims**

***1. CAVRA***

This Court has repeatedly instructed that to bring a CAVRA claim, a plaintiff must allege that they were a victim of an applicable violation while a minor and suffered personal injury as a result. 18 U.S.C. § 2255(a). That is all that the text of the statute requires, and this Court's analysis "begins and ends with the text." *G.M.*, 725 F. Supp. 3d at 772; *A.M.*, 728 F. Supp. 3d at 795.

CAVRA does not limit such suits to perpetrators of the underlying violations. The text requires a claimant be the victim of a § 1591 violation (or another underlying violations), but does not limit claimants to only suing the direct perpetrator of that underlying violation. To the extent that Defendants argue otherwise, they effectively ask this Court "to re-write the statute by inserting (after 'may sue') the words 'the offender' or 'the perpetrator.'" *Doe v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1340 (S.D. Fla. 2012). "As this Court[] reads it, the absence of a grammatical object in § 2255(a) is conspicuous and, therefore, likely intentional. The text provides no reason to believe that Congress intended to prohibit plaintiffs from suing beneficiaries of and participants in the many crimes enumerated in § 2255, so long as plaintiffs' claims comport with the traditional requirements of standing—injury in fact, causation, and redressability." *G.M.*, 725 F. Supp. 3d at 772–73.

Here, A.U.W., A.C., D.R.T., and Y.J. have sufficiently alleged that they were minors and suffered personal injuries due to their alleged trafficking. It is worth noting that in some cases, the Defendants argue that certain CAVRA claims are untimely under its statute of limitations.[84] For instance, the Red Roof Defendants argue that A.C.'s CAVRA claim is untimely because she was born in the spring of 1997 and therefore would have turned 18 in the spring of 2015. Because A.C.'s suit was filed in September 2025, they say her claim was time-barred under CAVRA's 10-year statute of limitations.[85] In doing so, they rely on this Court's September 2025 decision in *A.H. v. Red Roof Inns, Inc.*, which reasoned that enlargements to CAVRA's statute of limitations would not apply when the alleged trafficking had already concluded. 2025 WL 2721120, at *2–3 (S.D. Ohio Sept. 24, 2025) (Marbley, J.). After the briefing had concluded on the issue in these cases, however, this Court amended its *A.H.* decision and found that A.H.'s CAVRA claim was not time-barred and there would be no impermissible retroactive effect in enlarging CAVRA's statute of limitations to encompass her then-live claim. *A.H. v. Red Roof Inns, Inc.*, 2026 WL 2085221, at *3–5 (S.D. Ohio July 20, 2026) (Marbley, J.). As this Court explained in reconsidering its earlier *A.H.* decision, a CAVRA claim that was live in 2022 when the statute of limitations was removed entirely benefitted from that change. *Id.* at *5. Thus, these Plaintiffs benefitted from this statutory enlargement.

T.S. has also sufficiently alleged that she was a minor and suffered personal injury due to her alleged trafficking—but she was not a minor for *all* of her alleged trafficking, as the G6 Defendants and their franchisee HP Lodging, LLC point out.[86] True, T.S. alleged that she was trafficked at Wyndham and Red Roof-branded hotels in Houston in 2014, and at that time she

[84] *E.g.*, T.S. ECF Nos. 26 at 3–4; 54 at 2–4; 57 at 8–9; 83 at 1–5; A.C. ECF Nos. 26 at 3–4, 7–8; 39 at 1–5.
[85] A.C. ECF Nos. 26 at 3–4, 7–8; 39 at 1–5.
[86] T.S. ECF Nos. 23 at 3–5; 46 at 1–5.

*could* have still been a minor given she was 17 years old when her trafficking began in 2013. So it would not be proper to dismiss her CAVRA claims as against those defendants. *See Father Flanagan's Boy's Home v. Donlon*, 449 F. Supp. 3d 739, 743 (S.D. Ohio 2020) (Black, J.) (explaining that motions to dismiss pleadings on statute of limitations grounds should only be granted where the defense appears valid on the face of the pleading); *accord Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)) (a motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations"). Yet T.S. only alleges that she was trafficked at the G6 Defendants' branded hotels in 2018 and 2019, when she was in her early twenties. Thus, T.S. cannot assert a CAVRA claim against the G6 Defendants and their franchisees. Without a CAVRA claim, this Court lacks personal jurisdiction over the G6 Defendants and their local franchisees in T.S.'s case.

T.S. attempts some creative arguments to try to salvage personal jurisdiction over these defendants. First, she argues that the G6 Defendants consented to the general jurisdiction of Ohio courts by registering agents in this jurisdiction.[87] She recognizes that her position runs counter to well-settled Sixth Circuit precedent in *Pittock v. Otis Elevator Co.*, which rejected "personal jurisdiction . . . based on consent. 8 F.3d 325, 329 (6th Cir. 1993) ("[T]he mere designation of an agent in compliance with the service-of-process statute does not automatically eliminate the requirement of minimum contacts to establish personal jurisdiction."). But she contends that the Supreme Court rejected the reasoning of *Pittock* in *Mallory v. Norfolk S. Ry.*, 600 U.S. 122 (2023). Not so. *Mallory* dealt with an interpretation of Pennsylvania's law requiring registration for out of state businesses. As the Supreme Court explained, that law was "explicit that 'qualification as a foreign corporation' shall permit state courts to 'exercise general personal jurisdiction' over a

[87] T.S. ECF No. 66 at 7–11.

registered foreign corporation, just as they can over domestic corporations.'" *Id.* at 134 (quoting 42 Pa. Cons. Stat. § 5301(a)(2)(i)). And as the *Mallory* Court noted, it was deciding "a very old question . . . resolved more than a century ago in *Pennsylvania Fire* . . . that remains the law." *Id.* at 146.

There is simply no merit to T.S.'s overreading of *Mallory*, which was interpreting a Pennsylvania-specific law. Prior decisions of Sixth Circuit panels "remain[] controlling authority unless an inconsistent decision of the United States Supreme Court requires modification or [the Sixth Circuit] sitting en banc overrules the prior decision." *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001) (citations and internal quotation marks omitted). This Court does not see an inconsistency between *Pittock* (addressing Ohio law) and *Mallory* (reaffirming the Supreme Court's prior interpretation of Pennsylvania law). *Pittock* is still good law and binding authority on this Court. *Union Home Mortg. Corp. v. Everett Fin., Inc.*, 2023 WL 6465171, at * n.6 (N.D. Ohio Oct. 4, 2023) ("The key operative fact of the *Mallory* decision was that the Pennsylvania statute at issue acted as an *explicit* consent to general jurisdiction as part of the 'registration to do business' process, whereas the corollary Ohio statutes contain no such consent provision."); *see, e.g.*, *Rapport v. Chapiro*, 2026 WL 1953124, at *3 (N.D. Ohio June 5, 2026) ("[P]roper service of process does not eliminate the requirement of sufficient minimum contacts to establish personal jurisdiction."); *Kruglyak v. Unlimited Carrier, Inc.*, 2026 WL 2683266, at *5 (E.D. Tenn. Sept. 14, 2026) (citing *Pittock* favorably). Even were there some doubt about the continuing viability of *Pittock*—which there is not—district courts must be "extremely careful in concluding that circuit precedent is no longer good law." *In re Higgins*, 159 B.R. 212, 216 (S.D. Ohio 1993) (Holschuh, J.) (citation omitted). Accordingly, this Court will dismiss T.S.'s claims against the G6 Defendants for lack of personal jurisdiction.

Second, T.S. claims that her complaint states a perpetrator liability claim against HP Lodging, LLC, and therefore extraterritorial jurisdiction is proper under 18 U.S.C. § 1596. Alternatively, she requests that this Court either grant her leave to amend to add conspiracy allegations or dismiss her case without prejudice rather than transferring it.[88] HP Lodging, LLC also requests dismissal in the first instance.[89] To the extent T.S. asserts that she brought a perpetrator liability claim against HP Lodging, LLC and intended to assert jurisdiction under § 1596, that argument appears dubious based on her allegations. At any rate, she failed to provide fair notice that jurisdiction would be asserted under § 1596.[90] This Court will dismiss T.S.'s claims against HP Lodging, LLC for lack of personal jurisdiction.

Turning back to the claims of A.U.W., A.C., D.R.T., and Y.J. generally, as well as the claims of T.S. that remain, the final element of each of their CAVRA claims is an underlying TVPRA claim.[91]

### *2. TVPRA*

The requirements for bringing a civil TVPRA claim under the "beneficiary theory" of liability are: (1) the defendant must "knowingly benefit[] . . . financially or by receiving anything of value"; (2) from participating in a venture; (3) that the defendant "knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019). As a threshold matter, this Court has repeatedly held that a civil claim § 1595(a) can stand alone under a "beneficiary theory" of liability, and "civil defendants need not have committed the underlying criminal sex trafficking offense under § 1591." *G.M.*, 725 F. Supp. 3d at 776; *M.A.*, 425 F. Supp. 3d at 964. Thus, the

[88] T.S. ECF No. 67 at 1–3.
[89] T.S. ECF No. 76 at 1, 5.
[90] *See* T.S. ¶¶ 41–43.
[91] A.M.C. also brings a TVPRA claim, but the Defendants in her case only challenge venue.

Sixth Circuit's decision in *United States v. Afyare* often cited by Defendants is distinguishable, because it dealt with a *criminal* prosecution under § 1591(a)(2), and "require[d] the prosecution to prove that the defendant actually participated in a *sex trafficking venture*." 632 F. App'x 272, 286 (6th Cir. 2016). As this Court has oft-repeated, *Afyare* is readily distinguishable from these civil liability cases. *E.g.*, *M.A.*, 425 F. Supp. 3d at 968–69; *N.A.O.*, 2026 WL 2836383, at *9.

Turning to the elements of a TVPRA claim, Plaintiffs first have sufficiently alleged that the Defendants knowingly benefitted by renting rooms to their alleged traffickers. Indeed, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965.

Second, plaintiffs have also alleged sufficient facts to show participation in a venture at this early stage. As this Court has previously held, such participation "does not require actual knowledge of trafficking crimes but requires 'at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement.'" *G.M.*, 725 F. Supp. 3d at 777 (quoting *M.A.*, 425 F. Supp. 3d at 970)). For instance, Plaintiffs generally allege that the hotel Defendants rented rooms to their traffickers and thus provided secure physical spaces for their sexual exploitation. Some allegations go further—certain hotel Defendants are alleged to have turned a blind eye to, accommodated, or even participated in the alleged sex trafficking, either through their actions or inactions.

With respect to the franchisors, Plaintiffs allege that they exerted control over their franchisee hotels by providing centralized systems and platforms for a diverse set of functions, including reservations, guest information, and data harvesting. They are generally alleged to have regulated employee training and implemented other standards of operation, and in doing so failed

to implement policies, procedures, and trainings that would detect and inhibit sex trafficking. The gist of Plaintiffs' allegations across these cases are the same: considered as a whole, they allege that the Defendants engaged in commercial business ventures with their respective alleged traffickers. *G.M.*, 725 F. Supp. 3d at 778.

Plaintiffs have sufficiently alleged that the franchisor Defendants participated in a venture with their franchisees by maintaining expansive control over the properties, facilitating the hotel guest experience, and implementing policies and standards; both the franchisors and franchisees are alleged to have engaged in an ongoing commercial relationship with the Plaintiffs' purported traffickers. *See G.M.*, 725 F. Supp. 3d at 779.

Finally, Plaintiffs have alleged sufficient facts to pass muster under the plausibility standard that Defendants knew or should have known that they were benefitting from participation in a venture that was violating the TVPRA. The Defendants need not have actual knowledge of the violation—constructive knowledge is sufficient. *G.M.*, 725 F. Supp. 3d at 779–80 (citing *M.A.*, 425 F. Supp. 3d at 970). Notice of "'the prevalence of sex trafficking generally at [the subject] hotel[],' the failure 'to take adequate steps to train staff in order to prevent its occurrence,' and signs that 'should have alerted staff to [a plaintiff's] situation' are sufficient to meet the constructive knowledge requirement." *Id.* at 780 (quoting *M.A.*, 425 F. Supp. 3d at 968). Plaintiffs' allegations meet the pleading standard. In some circumstances, they allege actual knowledge and provide factual allegations showing how Defendants would have known about their trafficking. In others, they detail industry knowledge about red flags of trafficking and best practices to prevent trafficking at hotels, and then provide myriad allegations about how employees both at local franchisee hotels and at corporate franchisors should have known that trafficking was taking place at the hotels.

Taken as a whole, these allegations meet the pleading standards. So in sum, A.U.W., A.C., D.R.T., T.S., and Y.J. have stated viable TVPRA claims. And because they have stated TVPRA claims, they can bring CAVRA claims for injuries sustained as minors.

**C. Propriety of Venue**

Next, the Defendants generally argue that venue is improper before this Court. *See* 28 U.S.C. § 1391(b).

For the CAVRA cases, this matter is simple and has been examined by this Court in related cases. CAVRA includes a venue provision, which states "[a]ny action brought . . . may be brought in the district court of the United States that meets applicable requirements relating to venue under [28 U.S.C. § 1391]." 18 U.S.C. § 2255(c)(1). This Court has previously determined that it has jurisdiction over corporate defendants in CAVRA cases, as "they are all considered residents of the Southern District of Ohio for venue purposes" under 28 U.S.C. § 1391(b)(1). *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *10; *N.G. v. G6 Hosp., LLC*, 2026 WL 2858495, at *4 (S.D. Ohio Sept. 23, 2026). That general venue provision of the statute provides that "[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). And its neighboring provision on residency explains that, for purposes of venue, "an entity with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

This is also the singular matter for A.M.C.'s TVPRA claim alleging that she was trafficked at a Red Roof-branded hotel. The inquiry does not end at the locus of A.M.C.'s alleged trafficking because venue may be proper in multiple districts. Particularly relevant here is that venue may be

proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "The word substantial . . . is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *16 (citation and internal quotation marks omitted). Certainly, A.M.C. has alleged relevant activities tying Rashi, LLC to the Southern District of Ohio. Most significantly, these are the data transfers mandated of Rashi, LLC as a Red Roof franchisee, which allegedly contained internet data collected when A.M.C.'s traffickers advertised her for commercial sex on the hotel's free Wi-Fi. *See* Section IV(A)(1), *supra*.

**D. Discretionary Venue Transfer**

***1. A.U.W., A.C., D.R.T., T.S., and A.M.C.***

When a case is brought in a permissible forum, venue may be changed "[f]or the convenience of the parties and witnesses[] [and] in the interest of justice," as district courts may "transfer civil actions "to any other district or division where it might have been brought or . . . to which all parties have consented." 28 U.S.C. § 1404(a). As discussed, this forum is permissible for these cases because CAVRA provided nationwide personal jurisdiction over the Defendants in A.U.W., A.C., D.R.T., and T.S.'s cases, and a substantial portion of the events giving rise to A.M.C.'s TVPRA claim arose in this district. The question now is "whether transfer to another forum is justified" when considering "the private interests of the parties and public-interest concerns." *Doe v. Edlow*, 2026 WL 1551970, at *9 (S.D. Ohio June 2, 2026) (Marbley, J.) (citing, *inter alia*, *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006)).

Transfer pursuant to 28 U.S.C. § 1404(a) must be to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient. The balance of convenience should be

strongly in favor of a transfer before such will be granted. The decision whether to transfer venue is committed to the sound discretion of the trial court. *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *15 (citations omitted). The statute "promotes 'an individualized case by case consideration of convenience and fairness.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

This Court weighs five private-interest factors and four public-interest factors. The private-interest factors are: (1) "the plaintiff's choice of forum"; (2) "where the parties reside"; (3) "the location of willing and unwilling witnesses"; (4) "the location of evidence"; and (5) "the locus of events that 'gave rise to the dispute.'" *Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, 586 F. Supp. 3d 759, 776 (S.D. Ohio 2022) (Sargus, J.). The public-interest factors are: (1) "the court's interest in judicial economy"; (2) "docket congestion"; (3) "local interest in deciding the controversy at home"; and, in diversity cases, (4) "the interest of conducting the trial in the forum of the governing law." *Id.* 778. The public interest analysis is imbued by "the public's general interest in 'systemic integrity and fairness.'" *Id.*

Several years ago, this Court explained that "absent jurisdictional or venue deficiencies," it would "not exercise its discretionary power to transfer . . . cases to a different district court pursuant to § 1404." *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *21. More recently, this Court transferred a single-defendant case that did not involve "multiple corporate defendants and claims arising across multiple fora" to the district of her alleged trafficking, where her trafficker was prosecuted and sentenced. *B.R. v. JP & MC, LLC*, 2026 WL 2833670, at *6 (S.D. Ohio Sept. 22, 2026) (Marbley, J.). As this Court stated in *B.R.*, its prior decisions have addressed discrete cases, and "should not be misinterpreted as the Court deciding that it will *never* exercise its

discretionary power to transfer new and related cases. Questions of venue convenience do necessitate a case-by-case inquiry." *Id.* at *5.

This Court begins by evaluating the applicable private-interest factors. *First*, CAVRA contemplates that Plaintiffs may sue in any federal district court, and while they might not personally have a substantial connection to this forum, they do allege misconduct by Red Roof franchisor Defendants. This factor weighs against transfer. *Second*, the Red Roof franchisor Defendants reside in this district, although the Plaintiffs and other Defendants do not. Given that in each case, it appears that at least some parties will have to travel regardless of forum, this factor appears neutral overall. *Third*, it is not apparent where potential witnesses will be, so without further information, this Court must conclude that the proposed transferee court poses the same level of inconvenience, and thus this factor weighs slightly against transfer. *Fourth*, the allegations here "revolve around sex trafficking and corporate policies to ignore said sex trafficking," so the facts underlying these claims occurred across many fora, and the associated evidence is likely spread across different fora. *Id.* at *19. It appears that the evidentiary factor is neutral. *Id.* *Fifth*, none of these cases has a center of gravity in Ohio, since none of the trafficking was alleged to have occurred here. At the same time, given the combined "nationwide nature of sex trafficking" and allegations of corporate misconduct of national hotel brands, including Red Roof Inns, Ohio is not irrelevant to these cases either. *Id.* This factor is neutral. Taken together, two private-interest factors weigh slightly against transfer and three are neutral.

Next, this Court turns to the public-interest factors. *First*, judicial economy weighs against transfer to some extent, as this Court has already familiarized itself with the alleged facts of the case and has "familiarity with the merits of hotel TVPRA litigation." *Id.* at *20; *compare B.R.*, 2026 WL 2833670, at *5 (finding judicial economy factor neutral where transferee district handled

prosecution of alleged trafficker). *Second*, there do not appear to be manifest docket congestion issues, so this factor is neutral. *Third*, the districts where the alleged trafficking of the Plaintiffs occurred appear to have the most compelling local interest in adjudicating these matters, followed by the districts that are the principal places of business for hotel franchisors accused of corporate misconduct. This factor appears ultimately neutral given the particular allegations of nationwide corporate misconduct and the fact that the Red Roof Defendants are headquartered in this district. *Fourth*, this Court need not inquire into the governing law of the forum because this case arises under federal statutes. *B.R.*, 2026 WL 2833670, at *6. Overall, one public-interest factor weighs against transfer and the rest are essentially neutral.

*Finally*, the interests in systemic integrity and fairness counsel against transfer here, because in each of these cases there are "at a minimum two locations where a substantial series of events occurred" that form the basis of each lawsuit. *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *21. Particularly where nationwide hotel franchisors are named as defendants and are likewise named in many other related pending cases in this district, it remains "in the interest of fairness and judicial integrity to allow these cases to proceed to the merits in a district well-versed in the controlling law." *Id.*

In each of the cases brought by A.U.W., A.C., D.R.T., T.S., and A.M.C., the private- and public-interest factors weigh against transfer on balance, and it is in the interests of systemic integrity and fairness that this action remain here. This Court will not exercise its discretionary power to transfer these cases pursuant to § 1404.

***2. Y.J.***

The analysis for Y.J.'s case is notably distinct under the private-interest factors. *First*, Y.J. does not sue any corporate Red Roof entities or allege any facts that would connect her to this

forum. So while CAVRA contemplates that she might sue here, her failure to advance a connection to this forum means that this factor will weigh minimally against transfer. *B.R.*, 2026 WL 2833670, at *3. *Second*, neither Y.J. nor the defendants she sues reside in this district, but it appears that some parties will have to travel regardless of forum. This factor appears neutral. *Third*, without more information on the location of witnesses, this Court must conclude that the proposed transferee districts pose the same level of inconvenience, and this factor is neutral. *Fourth*, the allegations here "revolve around sex trafficking and corporate policies to ignore said sex trafficking" and appear to encompass many fora, so the associated evidence is likely spread across different states and districts. *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *19. So *fourth*, it appears that the evidentiary factor is neutral. *Id. Fifth*, this case certainly does not have its center of gravity here in Ohio, where there are no operative facts connecting it to this forum. *See B.R.*, 2026 WL 2833670, at *4–5. At the same time, given the combined "nationwide nature of sex trafficking" and allegations of corporate misconduct implicating a national hotel brand based in New Jersey, so the center of gravity of this case does not fall solely on Texas, either. *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *19. This factor favors transfer, but is not afforded great weight given Plaintiff's allegations. Taken together, two private-interest factors weigh slightly against transfer, two are neutral, and one favors transfer.

Turning to the public-interest factors, *first*, judicial economy still weighs against transfer given this Court's familiarity with this area of law. *Second*, there do not appear to be manifest docket congestion issues, so this factor is neutral. *Third*, Texas appears to have the most compelling local interest in adjudicating this matter given it was the location of the alleged trafficking, followed by New Jersey, given it is the principal place of business for hotel franchisors accused of corporate misconduct. But given that Plaintiff alleges she was a minor when trafficked

and alleges “corporate misconduct resulting in policies applied around the United States,” *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *20, any weight favoring transfer is minimal, and less than Plaintiff’s already minimally-weighted desire to proceed here. *Fourth*, the Court need not inquire into the governing law of the forum because this case arises under federal statutes. Overall, one public-interest factor weighs against transfer and the rest are essentially neutral.

*Finally*, the interests in systemic integrity and fairness counsel against transfer here, because “there are at a minimum two locations where a substantial series of events occurred that serve as the [basis] of [this] lawsuit[].” *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *21. Particularly where nationwide hotel franchisors are named as defendants and are likewise named in many other related pending cases in this district, it remains “in the interest of fairness and judicial integrity to allow these cases to proceed to the merits in a district well-versed in the controlling law.” *Id.*

The private- and public-interest factors weigh against transfer on balance, and it is in the interests of systemic integrity and fairness that this action remain here. This Court will not exercise its discretionary power to transfer Y.J.’s case to a different district court pursuant to § 1404.

***3. J.T.***

Finally, Plaintiff J.T.’s cases present idiosyncratic circumstances. J.T. is certainly correct that this Court’s prior decision transferring venue of her first case to the Eastern District of New York overlooked her allegations that she was a minor when she was trafficked, and thus could avail herself of nationwide personal jurisdiction under CAVRA. *See In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *20–21. J.T. waves away her decision to dismiss her claims voluntarily in the Eastern District of New York and refile again here as “not inappropriate” based on what she

characterizes as a "simple scrivener's error" on the part of this Court.[92] Yet this Court decided the matter, and its sister court receiving J.T.'s case is competent to adjudicate TVPRA claims.

J.T.'s actions raise "prudential concerns" of "forum or judge shopping," which can be addressed in targeted ways by scrutinizing the venue of the action. *Trump v. CASA, Inc.*, 606 U.S. 831, 939 n.9 (2025) (Jackson, J., dissenting). Forum shopping occurs "when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum . . . alone motivated the choice." *Emps. Ret. Sys. of City of St. Louis v. Jones*, 2020 WL 7487839, at *3 (S.D. Ohio Dec. 21, 2020) (Marbley, J.) (citations omitted). True, the selection of a forum likely to have some tactical advantages, standing alone, does not necessarily suggest improper motive. *Id.* And this Court has generally rejected forum-shopping arguments in related CAVRA cases. *B.R.*, 2026 WL 2833670, at *7 (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 528 (1990) (The discretionary venue transfer statute is meant to make venue convenient, not "allow defendants 'to use inconvenience to discourage plaintiffs from exercising opportunities that they already have.'"). It has done so because "Congress provided for nationwide personal jurisdiction under CAVRA," which must be balanced by "the convenience of the parties, witnesses, and the interests of justice"—which may favor transfer of cases where venue is otherwise proper. *Id.* at *3 (finding such a balance necessary to read 18 U.S.C. § 2255(c)(2) harmoniously with 28 U.S.C. § 1404(a)).

In this case, J.T.'s actions—at worst—could be construed as a specific attempt "to control the assignment of judges to [her] case[]," *In re Fieger*, 191 F.3d 451, 1999 WL 717991, at *3 (6th Cir. 1999), "conduct which abuses the judicial process." *Hernandez v. City of El Monte*, 138 F.3d 393, 398–99 (9th Cir. 1998) (citation omitted). Section 1404(a) discourages "such strategic machinations by plaintiff's counsel." *Meza v. Procter & Gamble Co.*, 2023 WL 3267861, at *4

---

[92] *E.g.*, J.T. II ECF No. 64 at 4–6.

(C.D. Cal. Apr. 27, 2023). "Venue is not a continental breakfast" where a plaintiff simply gets to "pick and choose on a . . . whim where and how a lawsuit is filed." *Chamber of Com. of U.S. v. Consumer Fin. Prot. Bureau*, 735 F. Supp. 3d 731, 740 (N.D. Tex. 2024).

This Court will not read any nefarious intent into J.T.'s decision to refile in this district court, as the prior transfer of J.T.'s case undoubtedly overlooked that J.T. pleaded she was a minor when she was trafficked. Thus, under this Court's precedent, J.T. could have brought her claim in this district court. But the transfer of J.T.'s claims arising from her sex trafficking has been decided, and this Court sees no reason to revisit that decision. The dismissal of J.T.'s first complaint in the Eastern District of New York "after an adverse [jurisdictional and transfer] ruling and then refiling in this Court constitutes impermissible forum-shopping." *Reiser v. RTI Int'l Metals, Inc.*, 2009 WL 1097250, at *2 (S.D. Ohio Apr. 21, 2009) (Spiegel, J.).

There is strong reason to discount entirely J.T.'s choice of forum in these cases, as it runs counter to the prior transfer of J.T.'s first action and appears wholly motivated by a desire to litigate in a specific forum before a specific federal judge. Moreover, judicial economy would not seem to weigh against transfer where the proposed transferee court already received a similar action brought by J.T. But even assuming the private-interest and public-interest factors would otherwise generally tilt against transfer of J.T.'s actions, as they did for the other actions, *see* Section IV(D)(1), *supra*, the interest in systemic integrity and fairness necessitate transfer of this action. *See Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*, 2003 WL 22387598, at *6 (N.D. Cal. Oct. 14, 2003). That is particularly so where J.T. has not provided a compelling reason for voluntarily dismissing her transferred case and then refiling actions in this district court.

It is worth emphasizing that "a transfer under § 1404(a), with respect to the outcome of the dispute, should amount to nothing more than a change of courtrooms." *Coffey v. Van Dorn Iron*

*Works*, 796 F.2d 217, 222 (7th Cir. 1986). The parties in J.T.'s cases have had the opportunity to address transfer of venue under § 1404.[93] This Court transfers J.T.'s cases *sua sponte* to the Eastern District of New York without ruling on the pending motions, pursuant to 28 U.S.C. § 1404(a). *See Moore*, 446 F.3d at 647 (detailing when *sua sponte* transfer is permissible). The transferee court will be best-positioned to consider the applicability of the pending motions to the remaining live issues.

**E. Insurance Intervention**

Next, Liberty Mutual Fire Insurance Company seeks to intervene pursuant to Federal Rule of Civil Procedure 24 in several of these actions regarding a distinct, separate, and contingent issue of commercial insurance coverage. The insurer provides coverage to certain corporate Red Roof entities who are defendants in these cases. It has denied coverage in these cases and seeks a declaratory judgment regarding its obligations to defend or indemnify the insured. It argues for both mandatory and permissive intervention.[94]

This Court first considers intervention as of right. A party may intervene as a matter of right. Federal Rule of Civil Procedure 24(a) mandates that courts "must permit anyone to intervene who": (1) makes a "timely" motion; (2) "claims an interest relating to the property or transaction that is the subject of the action;" (3) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) has interests that cannot be "adequately represent[ed]" by "existing parties." Fed. R. Civ. P. 24(a)(2); *see Grainger v. Ottawa Cnty.*, 90 F.4th 507, 513 (6th Cir. 2024) (citing *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2006) (characterizing the requirements of Rule 24(a)(2) as a four-factor test)).

---

[93] *See generally* JT III ECF Nos. 58; 68; JT II ECF No. 64.
[94] A.U.W. ECF No. 50 at 3–6; A.S. ECF No. 50 at 3–6; D.R.T. at 4–6; T.S. ECF No. 94 at 3–6; A.M.C. at 3–6.

Liberty Mutual's interests are contingent, not substantial, and depend on determinations of hotel liability and insurance contract obligations. *In re Hotel TVPRA Litig.*, 2026 WL 799293, at *3 (S.D. Ohio Mar. 23, 2026) (Marbley, J.). Put differently, potential for coverage under various insurance policies is irrelevant when considering the Plaintiffs' TVPRA and CAVRA claims against the Defendants here. Even assuming each motion to intervene is timely, they will fail on this requirement. Moreover, an insurer need not actually intervene to protect its rights under Ohio law—it is enough that Liberty Mutual has moved to intervene, as it has protected its rights sufficiently to avoid the snare of collateral estoppel. Finally, Liberty Mutual's interests are adequately represented by the Red Roof Defendants' interests in defending themselves on the merits. *Id.* at *3–4. So, insurer intervention is not mandatory in these cases.

A party may also request permissive intervention. Under Rule 24(b), courts "may permit anyone to intervene who" makes a "timely" motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Courts also consider undue delay and prejudice to the original parties, *id.* 24(b)(3), as well as any other relevant factors when evaluating permissive intervention. *Bell v. Kasich*, 2017 WL 3172778, at *5 (S.D. Ohio July 25, 2017). Other relevant factors can include Rule 24(a)(2) intervention-as-of-right factors. *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 759 (6th Cir. 2018).

This Court will not grant permissive intervention to insurers either. Liberty Mutual's motions fail to articulate common questions of law or fact to connect their insurance claims with TVPRA and CAVRA claims for sex trafficking. Plus, intervention would risk delay and prejudice the original parties by injecting issues of insurance coverage into these cases. *Id.* at *4–5.

### F. Default Judgment

Last, T.S. moves for default judgment against Defendant MGA Hospitality Group, Inc., but requests this Court hold the motion in abeyance pending resolution of the other claims asserted against defendants who have defended.

In multi-defendant cases where default is entered against a single defendant, "the preferred practice is for the court to withhold granting a default judgment until the trial of the action on the merits against the remaining defendants." *Am. Nat'l Prop. & Cas. Co. v. Williamson*, 2020 WL 7021421, at *2 (S.D. Ohio Nov. 30, 2020) (Marbley, J.) (citing *Kimberly v. Coastline Coal. Corp.*, 857 F.2d 1474 (6th Cir. 1988) (per curiam)).

Normally, this Court would hold such a default judgment motion in abeyance pending resolution of trial on the merits against the remaining defendants in that action. But Defendant MGA Hospitality Group, Inc. operated a franchised Motel 6 in California in 2018 and 2019 when T.S. alleged she was trafficked as an adult.[95] T.S. has not established personal jurisdiction, which is a prerequisite to default judgment. *O.C. v. Town & Country Motel*, 2026 WL 809538, at *3 (S.D. Ohio Mar. 24, 2026) (Marbley, J.) (quoting *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010)) ("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment."). This motion is denied as moot.

## V. CONCLUSION

For the foregoing reasons, this Court adopts the following disposition in these related sex trafficking cases.

---

[95] T.S. ¶¶ 29–30, 151–52.

**A.U.W., Case No. 2:25-cv-01087:**

The Motion to Dismiss submitted by the Red Roof Defendants (*A.U.W.* ECF No. 39) is **DENIED**. Liberty Mutual's Motion to Intervene (*A.U.W.* ECF No. 50) is **DENIED**.

**A.C., Case No. 2:25-cv-01097:**

The Motion to Dismiss submitted by the Red Roof Defendants (*A.C.* ECF No. 26) is **DENIED**. Liberty Mutual's Motion to Intervene (*A.C.* ECF No. 50) is **DENIED**.

**D.R.T., Case No. 2:25-cv-01096:**

The Motions to Dismiss submitted by the Wyndham Defendants (*D.R.T.* ECF No. 18), the Red Roof Defendants (*D.R.T.* ECF No. 53), and Sleepland Inc. (*D.R.T.* ECF No. 58) are **DENIED**. Liberty Mutual's Motion to Intervene (*D.R.T.* ECF No. 91) is **DENIED**.

**A.M.C., Case No. 2:25-cv-00851:**

The Motions to Dismiss submitted by the Red Roof Defendants (*A.M.C.* ECF No. 27) and Rashi, LLC (*A.M.C.* ECF No. 44) are **DENIED**. Liberty Mutual's Motion to Intervene (*A.M.C.* ECF No. 50) is **DENIED**.

**T.S., Case No. 2:25-cv-01099:**

The Motions to Dismiss submitted by the Wyndham Defendants (*T.S.* ECF No. 18), Asim Enterprises LP (*T.S.* ECF No. 26), the Red Roof Defendants (*T.S.* ECF No. 57), and Westchase Interests, LLC (*T.S.* ECF No. 71) are **DENIED**.

The Motions to Dismiss submitted by the G6 Defendants (*T.S.* ECF No. 46) and HP Lodging, LLC (*T.S.* ECF No. 33) are **GRANTED** for lack of personal jurisdiction. T.S.'s Motion for Default Judgment (*T.S.* ECF No. 108) is **DENIED as MOOT**, and Defendant MGA Hospitality Group, Inc. is **DISMISSED** *sua sponte* for lack of personal jurisdiction. Liberty Mutual's Motion to Intervene (*T.S.* ECF No. 94) is **DENIED**.

**Y.J., Case No. 2:25-cv-01091:**

The Motions to Dismiss submitted by the Wyndham Defendants (*Y.J.* ECF No. 15), G6 Defendants (*Y.J.* ECF No. 38), and Couture Hotel Group (*Y.J.* ECF No. 39) are **DENIED**.

**J.T., Case Nos. 2:25-cv-00461, 2:25-cv-00690:**

These cases are **TRANSFERRED** to the United States District Court for the Eastern District of New York, and are related to Case No. 2:23-cv-03209 on that court's docket. All motions remain pending in both actions.

The Clerk of Court is **DIRECTED** to file this Opinion & Order **ONLY** in above-captioned cases.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 29, 2026**